## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

_____
                                  :
DONALD A. KURZ,                   :
                                  :    Civil No. 11-375-NLH
         Plaintiff,               :
                                  :
      v.                          :    **OPINION**
                                  :
EMAK WORLDWIDE, INC.,             :
                                  :
         Defendant.               :
_____  :

**APPEARANCES:**

Stephen C. Norman
Jeremy W. Ryan
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
     _Attorneys for Plaintiff_

Kenneth J. Nachbar
Ann C. Cordo
Shannon E. German
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
     _Attorneys for Defendant_

**HILLMAN, District Judge**

     Presently before the Court are Plaintiff Donald A. Kurz's Motion to Remand to the State of Delaware's Court of Chancery, and Defendant EMAK Worldwide Inc.'s Motion to Change Venue to the United States District Court for the Central District of California.  For the reasons set forth below, Plaintiff's Motion to Remand [Doc. 3] will be denied, and Defendant's Motion to Change Venue [Doc. 5] will be granted.

## I. Background

Plaintiff served on Defendant's Board of Directors (hereinafter "Board") from 1990 until his resignation in 2005. At the request of its remaining members, Plaintiff rejoined the Board in 2009.  As an incentive for his return, Defendant offered Plaintiff an indemnification agreement (hereinafter "Agreement"). This agreement provided Plaintiff with the right to the advancement of fees and expenses, including expenses related to enforcement of the Agreement, incurred in his capacity as director.[1]  Section 9 of the Agreement specifically provides:

> Advancement of Expenses.  Notwithstanding any provision of this Agreement to the contrary, the Company [Defendant] shall advance the expenses incurred by [Plaintiff] in connection with any Proceeding. . . . Advances shall be made without regard to [Plaintiff's] ability to repay the expenses and without regard to [Plaintiff's] ultimate entitlement to indemnification under the other provisions of this Agreement.  Advances shall include any and all reasonable Expenses incurred pursuing an action to enforce this right of advancement, including Expenses incurred preparing and forwarding statements to the Company to support the advances claimed.

Doc. 4, Exhibit A § 9.  The Agreement additionally contains a forum selection clause.  This clause provides the Chancery Court of the State of Delaware with the exclusive jurisdiction to adjudicate all actions arising out of the Agreement. Id. at § 22 (The parties consent to "submit to the exclusive jurisdiction of

---

[1]  Plaintiff is entitled to advancement of fees with respect to "any threatened, pending or completed action . . . in which [Plaintiff] was, is or will be involved as a party or otherwise by reason of the fact that [Plaintiff] is or was a director or officer of the Company, by reason of any action taken by him or of any action taken on his part while acting as director or officer of the Company." Doc. 4, Exhibit A §2(g)

2

the Chancery Court for purposes of any action or proceeding arising out of or in connection with the Advancement Agreement").

On July 20, 2010, Plaintiff initiated the present matter (hereinafter "Advancement Action") in the Delaware State Chancery Court to compel enforcement of the Agreement with respect to three actions: (1) the matter currently before the Court (the Advancement Action); (2) a separate action in Delaware (hereinafter "Delaware Action"); and (3) a civil action in California (hereinafter "California Action").  In the Delaware Action, Plaintiff commenced a lawsuit in the Chancery Court in October 2009 regarding the validity of an agreement that related to the size and membership of the Board.  Defendant, in May 2010, initiated the California Action because of Plaintiff's conduct relating to the Delaware Action.  On July 19, 2010, the Court of Chancery determined Plaintiff was entitled to attorneys' fees, pursuant to the Agreement, for the Delaware Action.  The following day, Plaintiff commenced the present matter, the Advancement Action, in the Chancery Court.[2]

Approximately one month later, on August 5, 2010, in the United States Bankruptcy Court, Central District of California, Defendant filed voluntary petitions for relief under chapter 11

---

[2]   The parties agree that Plaintiff is entitled to indemnification with respect to the Delaware Action. Defendant, however, challenges the Agreement's applicability to the California Acton because it believes Plaintiff acted in his personal, not official capacity. Doc. 9, Def. Br. 6.  The parties also seemingly dispute several associated costs with the Advancement Action. Doc. 11, Pl. Br. 2.

of the United States Bankruptcy Code.  The bankruptcy filing automatically stayed Plaintiff's Advancement Action.  Shortly thereafter, the bankruptcy court approved the appointment of a special litigation committee (hereinafter "Special Litigation Committee").  On December 23, 2010, Plaintiff filed a proof of claim with the bankruptcy court, asserting indemnification pursuant to the Agreement with respect to the Delaware, California and Advancement Actions.  In response, the Special Litigation Committee objected to Plaintiff's proof of claim and asserted that the fees and expenses incurred in the California Action were not within the scope of the Agreement.  Plaintiff, on April 20, 2011, moved for relief from the automatic stay in order to pursue the Advancement Action and prove the Agreement's applicability to the California action.[3]  On April 27, 2011, Defendant, pursuant to 28 U.S.C § 1452, removed the Advancement Action to this Court.  Shortly thereafter, Plaintiff filed a Motion to Remand, and Defendant filed a Motion to Transfer Venue to the United States District Court, Central District of California for automatic referral to the bankruptcy court. Plaintiff opposes Defendant's Motion to Transfer, and requests remand of the Advancement Action to the Chancery Court.

---

[3]  On May 11, 2011, the bankruptcy court denied Plaintiff's request to lift the stay.  The court also declined to address Plaintiff's advancement claim until this Court determines the proper venue.

## II. DISCUSSION

### A. Motion to Remand

Plaintiff asserts that this Court cannot exercise jurisdiction because Defendant waived its right to removal when it agreed to litigate any claims related to the Agreement "in the Court of Chancery of the State of Delaware (the 'Delaware Court'), and not in any other state or federal court . . ." Doc. 4, Exhibit A § 22.  According to Plaintiff, Defendant's consent to the forum selection clause "waive[d] any objection to the laying of venue of any such action or proceeding in the Delaware Court." Id.  In response, Defendant contends this Court can adjudicate this matter because the forum selection clause is unenforceable for reasons of public policy.

Removal of this matter is governed by 28 U.S.C. § 1452, which provides, in pertinent part, that:

> (a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title

28 U.S.C. § 1452(a).  Section 1334 grants district courts with "original and exclusive jurisdiction of all cases under title 11", and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)&(b).  Cases (1) under title 11, such as, the bankruptcy petition, and proceedings (2) arising under title 11 or (3) arising in cases under title 11 constitute core proceedings. In re Resorts Int'l, Inc., 372 F.3d

5

154, 162 (3d Cir. 2004).  However, cases that are merely related to a case under title 11 are non-core proceedings.  Id. at 163-64.  The determination of whether a claim is a core or non-core proceeding dictates a court's enforcement of a forum selection clause.  In re Exide Techn., 544 F.3d 196, 206 (3d Cir. 2008).

The Third Circuit has opined that the "law of the state . . . whose law governs the construction of the contract" determines the enforceability of a forum selection clause, unless a "significant conflict between some federal policy or interest and the use of state law exists."  In re Diaz Contracting Inc., 817 F.2d 1047, 1050 (3d Cir. 1987), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495, 109 (1989) (internal quotations and emphasis omitted).  Neither party disputes that the Agreement specifies the Delaware State Court of Chancery as the proper forum for claims arising under the Agreement.  The Delaware Supreme Court has adopted the standards enunciated by the United States Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) to determine the enforceability of a forum selection clause. See e.g., Ingres Corp. v. CA, Inc., 8 A.3d 1143, 1146 & 1146 n.9 (Del. 2010).

In Bremen, the Supreme Court held that a forum selection clause is presumptively valid, and should be enforced unless the resisting party demonstrates that enforcement would be unreasonable under the circumstances. Bremen, 407 U.S. at 10.  A forum selection clause is unreasonable if (1) its enforcement would violate a strong public policy of the forum, (2) the

selected forum is so seriously inconvenient that it deprives a party of its day in court, or (3) its incorporation into the contract is the result of fraud or overreaching. Id. at 15. Defendant contends that the forum selection clause violates the first and second prongs of the Bremen test.[4]

Courts have recognized the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court. In re Iridium Operating LLC, 285 B.R. 822, 837 (S.D.N.Y. 2002) (concluding that in a core bankruptcy proceeding, "the interests of justice and the public interest in the centralization of all bankruptcy proceedings" justify non-enforcement of a forum selection clause); In re Mercury Masonry Corp., 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) ("Additionally, enforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending"); In re Wheeling-Pittsburgh Steel Corp., 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) ("Public policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending").  This policy ensures debtors with an "orderly and expeditious rehabilitation or liquidation," and provides them with "a full, fair, speedy, and unhampered chance for reorganization." Societe Nationale Algerienne Pour La Recherche, etc. v. Distrigas Corp., 80 B.R. 606, 610 (D. Mass.

---

[4]  Because the Court concludes below that enforcement of the forum selection clause would violate public policy, it will not consider Defendant's alternative argument that the clause's enforcement is unreasonable under the circumstances of this case.

1987).  However, the importance of centralization waxes and wanes with the characterization of the proceeding as either core or non-core. *See* Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 201-02 (3d Cir. 1983) (holding that in a non-core proceeding, the policy of centralizing bankruptcy proceedings was not sufficient to overcome the policy favoring enforcement of a forum selection clause) *overruled on other grounds by* Lauro Lines v. Chasser, 490 U.S. 495 (1989).  Consequently, the core and non-core distinction dictates enforceability of a forum selection clause. In re Exide Tech., 544 F.3d at 206 ("Whether claims are considered core or non-core dictates . . . the enforcement of a forum selection clause. . . . The dispositive issue, therefore, is whether the claims asserted . . . in state court are 'core' bankruptcy claims").

The Third Circuit's decision in In re Exide Technologies implies that forum selection clauses are unenforceable in core bankruptcy proceedings when their enforcement would remove the matter from the bankruptcy court's jurisdiction. Id. at 206; *see* Diaz Contracting Inc., 817 F.2d at 1051 n. 9 (concluding that the argument that "Congress could not have intended to permit contractual forum selection clauses to override the policy of the Bankruptcy Code to concentrate core bankruptcy proceedings in the bankruptcy court in order to effectuate the Congressional purpose of speedy rehabilitation of the debtor" was "not foreclosed by our decision in Coastal Steel"); *see also* Wachovia Nat'l Bank Ass'n v. Encap Golf Holdings LLP, 690 F. Supp.2d 311, 330-31

8

(S.D.N.Y. 2010) (concluding that "by negative implication, the Third Circuit indicated that if a claim is core, forum selection clauses should not be enforced. . .").  In that case, the court analyzed whether a state claim constituted a core or non-core proceeding in order to determine the applicability of a forum selection clause.  Although the Third Circuit ultimately remanded the matter for further consideration, its inquiry indicates that the distinction between core and non-core proceedings is critical.  If a forum selection clause was enforceable in a core bankruptcy proceeding, the court would not have engaged in the aforementioned inquiry.  Rather, it would have remanded the case based upon the forum selection clause's presence. *See* <u>In re Exide Tech.</u> 544 F.3d at 218 n.15 (noting that if the claims are non-core, a forum selection clause should be enforced).  Since the Court did not remand because of the mere presence of a forum selection clause, this Court concludes that forum selection clauses are unenforceable when the state action falls within a bankruptcy court's core jurisdiction.  Other courts have concluded similarly. *See e.g.,* <u>In re DHP Holdings II Corp.</u>, 435 B.R. 264, 270 (Bankr. D. Del. 2010) (implying that forum selection clauses are inapplicable in core bankruptcy proceedings); <u>In re Iridium Operating LLC</u>, 285 B.R. at 837 ("[A]lthough there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core"); <u>In re N. Parent, Inc.</u>, 221 B.R. 609,

622 (Bankr. D. Mass. 1998) ("Retaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors. . . . By enforcing the forum selection clause in non-core, related claims, where the public policy concerns are less clear, this Court also upholds the parties' right to contractually decide where to litigate their pre-petition contractual disputes") (internal citations omitted).

To determine whether a claim is core, a court must first consult the list of core proceedings detailed in 28 U.S.C. § 157(b)(2). Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). Although this section does not define core, it provides a non-exhaustive list of proceedings that may be considered core.[5] The

---

[5]   Under 28 U.S.C. § 157(b)(2), "core proceedings include, but are not limited to":
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;

court then must apply the test for a 'core' proceeding.  Under this test, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." Id. (internal quotations omitted).  Non-core proceedings, on the other hand, "are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11." Regal Row Fina, Inc. v. Washington Mut. Bank, No. 04-1033, 2004 WL 2826817, at * 6 (N.D. Tex. Dec. 9, 2004).

Defendant contends that the pending matter, the Advancement Action, constitutes a core proceeding because it involves the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B) (stating that "[c]ore proceedings include [the] allowance of disallowance of claims against the estate . . .").  Plaintiff retorts that the Advancement Action does not invoke a substantive right under the Bankruptcy Code because it concerns contract-based state law claims that arose from a pre-petition contract.  Although Defendant acknowledges that Plaintiff's claims are entirely based upon state law, it additionally argues

---

(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

that when Plaintiff filed his proof of claim with the bankruptcy court, the Advancement Action transformed into a core proceeding, thus subjecting it to the bankruptcy court's jurisdiction.

After a review of the applicable case law, this Court concludes that a precise point of delineation for whether a pre-petition state law claim constitutes either a core or non-core proceeding depends upon (1) whether the creditor filed a proof of claim with the bankruptcy court, and (2) the relationship between the state action and proof of claim.  If a creditor does not file a proof of claim with the bankruptcy court, courts catagorize pre-petition state law claims as non-core proceedings. *See e.g.*, Stoe v. Flaherty, 436 F.3d 209, 217 (3d Cir. 2006) (holding that when no proof of claim was filed, a state law action for unpaid severance benefits did not "arise under" or "arise in" a bankruptcy case and, consequently, was a non-core proceeding); In re DHP Holdings II Corp., 435 B.R. at 271-72 (concluding that when no proof of claim was filed, a dispute over a pre-petition contract was merely a breach of contract claim and, therefore, a non-core proceeding); Street v. The End of the Road Trust, 386 B.R. 539, 544-45 (D. Del. 2008) (finding that when no proof of claim was filed, a claim for advancement of attorneys' fees was not a core proceeding because it involved a contract-based state law claim).  However, a pre-petition state law claim may transform into a core proceeding if the creditor files a proof of claim with the bankruptcy court. *See* In re Meyertech Corp., 831 F.2d 410, 417-18 (3d Cir. 1987) (recognizing that although this

12

"action . . . has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy," the claimant's filing of a proof of claim invoked the bankruptcy court's core jurisdiction); *see also* In re Phico Group, Inc., 304 B.R. 170, 173 (Bankr. M.D. Pa. 2003) (concluding that the filing of a proof of claim transformed a non-core proceeding into a core proceeding).  The voluntary act of filing a proof of claim "triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the claimant] to the bankruptcy's courts equitable power." Langenkamp v. Culp, 498 U.S. 42, 44 (1990) (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 58-59 and n. 14 (1989)).

The filing of a proof of claim, however, only transforms a pre-petition state law action into a core proceeding when the proof of claim raises the identical issues as the state action. In re Argus Group 1700, Inc., 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) (holding that "[T]he filing of a proof of claim in bankruptcy transforms a pre-petition state law claim which was filed in state court before the bankruptcy into a core proceeding . . . only . . . where the proof of claim raises the same claims as the state law action"); *see* In re Meyertech Corp., 831 F.2d at 417-18; *see also* In re Exide Tech., 544 F.3d at 213 (stating that the court would accept the reasoning that the filing of a proof of claim invoked the jurisdiction of the bankruptcy court when "the subject matter of the proofs of claim is the same as that of the state law action").  A state law action and proof of claim

13

are similar when the bankruptcy case and state law action are so
intertwined that the resolution of the state law claim affects
the allowance or disallowance of claims. Regal Row Fina, Inc.,
2004 WL 2826817, at * 7; see In re Norrell, 198 B.R. 987, 993-994
& n.4 (Bankr. N.D. Ala. 1996) (holding that the state court
action constituted a core proceeding because the factual basis
for the state court action was identical to the factual basis for
the proof of claim).  In other words, before the debtor can
either establish a reorganization plan or pay its creditors, the
extent of the debtor's liability to the creditor, if any, with
respect to the state action must first be resolved. Regal Row
Fina, Inc., 2004 WL 2826817, at * 7.  Thus, when the potential
recovery to the claimant is contingent upon a successful
resolution of the state law action, the filing of a proof of
claim transforms the state action into a core proceeding.

    The Third Circuit's decision in In re Meyertech Corp., a
case similar to the pending matter, is especially illustrative of
the relationship between the filing of a proof of claim and a
related state action.  In that case, after the creditor filed a
proof of claim, its state law product liability action for
allegedly negligent pre-petition conduct was adjudicated by the
bankruptcy court. In re Meyertech Corp., 831 F.2d at 412-13.
After the conclusion of the adversarial proceeding, the creditor
appealed and asserted that the bankruptcy court lacked
jurisdiction to decide the matter because the state law claim was
not a core proceeding as defined by 28 U.S.C. § 157(b)(2). Id. at

14

413.  The Third Circuit disagreed.  First, it characterized the bankruptcy proceeding as an "action which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy." Id. at 417. This characterization is critical because it demonstrates both the degree of similarity and connectedness between the state action and the bankruptcy case.  In order to resolve the bankruptcy case, the court first had to adjudicate the state claim.  The In re Meyertech Corp. Court then noted that the creditor's act of filing a proof of claim created the action in bankruptcy court. Id. at 418.  Thus, by invoking the jurisdiction of the bankruptcy court with respect to a state action with the same factual basis as the proof of claim, the state claim was transformed into a core proceeding. See id. at 417-18.

Presently, the Advancement Action constitutes a core bankruptcy proceeding because it directly affects the allowance or disallowance of claims against Defendant's estate. See 28 U.S.C. § 157(b)(2)(B).  On December 23, 2010, Plaintiff filed a proof of claim in the bankruptcy court asserting a claim, pursuant to the Agreement, for all fees and expenses related to the Delaware, California and Advancement Actions. Doc. 10, Ex. C at ¶ 4(a)-(c) (Plaintiff's "claims for advancement and indemnification under the Indemnification Agreement arise from the following actions" the Delaware, California and Advancement Actions).  This proof of claim involves the identical legal and factual issues currently pending before the Court, whether the

Agreement entitles Plaintiff to all fees and expenses with
respect to the Delaware, California and Advancement Actions. Doc.
10, Ex. B at ¶ 1 (Plaintiff "brings this action . . . to compel
the advancement of expenses (including attorneys' fees) incurred
by Plaintiff: (1) in connection with this action; (2) in defense
of counterclaims brought against him in this Court . . . ; and
(3) in a civil action pending in the Superior Court of the State
of California. . ."). As a result, this case is intertwined with
the bankruptcy matter. Prior to the confirmation of a
reorganization plan or payment to creditors, the extent of
Defendant debtor's liability to Plaintiff because of the
Agreement, if any, must first be resolved. *See* Regal Row Fina,
Inc., 2004 WL 2826817, at * 7. In other words, the resolution of
the Advancement Action will determine the allowance or
disallowance of Plaintiff's claim against Defendant's estate.
Or, stated differently, before a decision on the proof of claim
may occur, the Advancement Action must first be decided. *See* In
re Mercury Masonry Corp., 114 B.R. at 39 (holding that the
creditor's state action is transformed into a core proceeding,
rendering the forum selection clause unenforceable, because the
resolution of the proof of claim is dependent upon the court's
adjudication of the state claim). Ultimately, no matter how the
issue is phrased, the relationship between the Advancement Action
and proof of claim is obvious, the resolution of the Advancement
Action impacts the proof of claim and will affect the allowance
of disallowance of claims against Defendant's estate. *See* In re

Norrell, 198 B.R. at 994 & n.4.  This is especially true in this matter because Plaintiff's Advancement Action was a factor that helped precipitate Defendant's bankruptcy. *See* Doc. 10, Ex. G at ¶ 32 & 35.

This similarity between the proof of claim and Advancement Action transforms the latter into a core proceeding. *See* In re Exide Tech., 544 F.3d at 218 (implying in dicta that state law actions which share the same claims as a creditor's proof of claim are core proceedings); s*ee also* Regal Row Fina, Inc., 2004 WL 2826817, at * 7.  In order to resolve the Advancement Action, a court must determine the scope of the Agreement and whether it encompassed Plaintiff's acts with respect to the California Action.  Similarly, before the bankruptcy court can resolve Plaintiff's proof of claim, it must ascertain whether the Agreement encompassed Plaintiff's acts that led to the California Action.  As the bankruptcy court acknowledged, these are exactly the same issues. *See* Doc. 10, Ex. F at 30-31 ("So it seems correct. . . that I can't decide whether these fees are items that ought to be paid by the Debtor. . . until the advancement action is decided").  Because the Advancement Action and proof of claim involve the same claims, legal question and factual basis, the validity of Plaintiff's proof of claim is entirely dependent upon the outcome of the Advancement Action.  This connectedness transforms the Advancement Action into a core proceeding.  The Court, therefore, concludes that because the Advancement Action is a core proceeding, Defendant is not bound by the forum

17

selection clause in the Agreement, and Plaintiff's Motion to

remand will be denied.[6]

_____

[6]   The Court pauses to note that neither In re Exide
Technologies, 544 F.3d 196 (3d Cir. 2008) or Stern v. Marshall,
____ U.S. ____, 131 S. Ct. 2594 (2011) dictate a different
result.  In In re Exide Technologies, the Third Circuit held that
the filing of a proof of claim cannot transform a state court
cause of action into a core proceeding when the state action was
strictly between non-debtors. 544 F.3d at 216-17 ("Therefore, we
now hold that, by filing proofs of claim in [debtor's] bankruptcy
proceeding, the [creditors] have not transformed their state law
claims against non-debtor defendants into core matters that the
Bankruptcy Court must resolve.  The claims asserted in the
[creditors'] proofs of claim are not the same as the claims
against the non-debtor defendants in the state court action").
In other words, when the proof of claim and state action are not
identical, the filing of the proof of claim cannot transform the
state action into a core proceeding. See id. ("The proofs of
claim do not assert the state law causes of action against
[debtor], but rather assert a right to collect from [debtor],
should the [creditors] win a judgment that the [non-debtor
parties] are unable to satisfy.  They are essentially
contribution or indemnification claims where the claimants are
looking" only to collect from debtor if the non-debtor party
cannot pay the judgment).  The present matter is factually
distinct.  As discussed above, both the state action and proof of
claim arise out of the same facts and contain the same legal
question, whether the Agreement entitles Plaintiff to fees and
expenses with respect to the California Action.  Thus, the
resolution of the Advancement Action dictates whether Plaintiff
may recover pursuant to his proof of claim.
      In Stern v. Marshall, the Supreme Court opined that the
bankruptcy court "lacked the constitutional authority to enter a
final judgment on a state law counterclaim that is not resolved
in the process of ruling on a creditor's proof of claim." ___
U.S. at ___ 131 S. Ct. at 2620.  Thus, Stern's holding is very
limited and only removes state-law counterclaims from the
bankruptcy court's jurisdiction when they "cannot be fully
resolved in the claims allowance process." In re Salander
O'Reilly Galleries, ____ B.R. ____, No. 07-30005, 2011 WL
2837494, at * 11 (Bankr. S.D.N.Y. July 18, 2011).  The present
matter, however, is very factually distinct from Stern. As noted
above, the proof of claim is identical to the state action;
therefore, it must be adjudicated in order for the bankruptcy
court to resolve the proof of claim.

18

**B. Equitable Remand**

In the alternative, Plaintiff asserts that the Advancement Action should be remanded on equitable grounds under 28 U.S.C. § 1452.  Section 1452(b) provides the court with authority to remand a removed action "on any equitable grounds." 28 U.S.C. § 1452(b).  Courts in this district have considered the following non-exhaustive factors to determine the appropriateness of equitable remand:

> 1. the court's duty to decide matters properly before it;
> 2. plaintiff's choice of forum as between state and federal courts;
> 3. nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;
> 4. prejudice to involuntarily removed parties;
> 5. comity considerations;
> 6. economical and/or duplicative use of judicial resources and
> 7. effect a remand decision would have on the efficient and economic administration of the estate.

Gorse v. Long Neck, Ltd., 107 B.R. 479, 482 (D. Del. 1989).

Plaintiff contends equitable remand is appropriate because Defendant removed the Advancement Action as part of its scheme to forum shop and avoid litigation before Delaware State Chancery Court Vice Chancellor Laster.  According to Plaintiff, Defendant seeks to avoid Vice Chancellor Laster because he has "ruled in favor of plaintiffs, adopted plaintiff's view of the facts and the case, and has made comments reflecting a strong distrust for some of the defendants and their motives. . ." Doc. 4, Pl. Br. 13 (quoting Debtors' Revised First Amended Disclosure Statement, In re EMAK Worldwide, Inc., et al., Case No. 2:10-42779-RN, (Bankr.

19

C.D. Cal. April 15, 2011), 64, Ins. 17-21).

The Court does not agree that Plaintiff's interpretation of these facts justifies equitable remand.  Defendant only filed for bankruptcy after Vice Chancellor Laster ordered it to pay approximately 87% of its available, unrestricted cash, to Plaintiff for his attorneys' fees regarding the Delaware Action. As the Court discussed above, the relationship between potential indemnification pursuant to the Advancement Action, and the allowance or disallowance of claims against the estate are substantially entwined.  Plaintiff is a creditor, and the outcome of its state action could substantially impact the distribution of Defendant's estate.  Thus, removal and consolidation of this matter with the bankruptcy case would ensure the most timely and inexpensive resolution of both cases.

The factors discussed in Gorse also weigh against equitable remand.

**1.  The court's duty to decide matters properly before it**

As addressed above, the forum selection clause is unenforceable in a core proceeding, thus it cannot form an equitable ground for abstention.  As such, this factor weighs in favor of Defendant.

**2.  Plaintiff's choice of forum as between state and federal courts**

This factor weighs in favor of equitable remand because Plaintiff chose Delaware as the forum state.

20

### 3.   Nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved

Plaintiff argues that remand is appropriate because the resolution of the Advancement Action turns squarely on the interpretation of the provisions of the Agreement under Delaware state law.  The Court does not agree with Plaintiff.  Although the Advancement Action solely involves an interpretation of Delaware law, the questions raised by the Agreement are neither novel nor complex.  Thus, they can be adjudicated by the bankruptcy court. *See* <u>In re Red Top Rentals, Inc.</u>, No. 09-5229, 2010 WL 2737182, at *4 (Bankr. E.D. Mich. 2010) (noting that claims of breaches of a promissory note and guaranty "are not such unique issues" of state law "as would exceed the adjudicative abilities" of the federal court and "compel remand").  This factor, therefore, weighs in favor of Defendant.

### 4.   Prejudice to involuntarily removed parties

Given that Plaintiff is already a party to the bankruptcy case because he voluntarily filed a proof of claim in the bankruptcy court, the Court cannot conclude that he would suffer any prejudice if this matter is not remanded. *See* <u>Street</u>, 386 B.R. at 547-48 (noting that the bankruptcy court's familiarity with the parties, facts and other related proceedings disfavors equitable remand).  Thus, this factor weighs in favor of Defendant.

### 5.   Comity considerations

Plaintiff contends that the interests of comity favor remand

21

because the Chancery Court has a vested interest in the
adjudication of disputes arising under Delaware law.   In
response, Defendant argues that the relationship between the
bankruptcy case and Advancement Action disfavors equitable
remand, and favors transfer to California for automatic referral
to the bankruptcy court.   The Court agrees with Defendant.
Since, as discussed above, the ultimate resolution of the
Advancement Action implicates matters of bankruptcy,
considerations of judicial economy and comity favor the
adjudication of all matters in the bankruptcy court. *See* LJM2
Co-Investmentment, L.P. v. LJM2 Capital Mgmt., L.P., No. 02-1498,
2003 WL 431684, at * 5 (D. Del. Feb. 24, 2003) (finding equitable
remand appropriate because the issues arising in the removed
matter were related to the issues remaining in the state
proceeding).   Therefore, this factor weighs in favor of
Defendant.

> **6.   Economical and/or duplicative use of judicial
> resources & Effect a remand decision would have on the
> efficient and economic administration of the estate**

Plaintiff argues that remand is appropriate because the
Chancery Court's familiarity with the applicable law and
underlying facts would provide the most efficient and economical
resolution of this matter.   In contrast, Defendant contends that
transferring the Advancement Action to the bankruptcy court would
promote the most efficient use of judicial resources, and that
remand would be detrimental to the goals of bankruptcy.   The
Court agrees with Defendant.   Plaintiff filed an adversary

22

proceeding against Defendant in the bankruptcy court that raises the identical issues in the pending matter.  As noted several times above, the extent of Defendant's liability, if any, is dependent upon the outcome of the Advancement Action.  Thus, if both the bankruptcy case and Advancement Action were resolved in the same forum, judicial efficiency would be better served.  *See In re Red Top Rentals, Inc.*, 2010 WL 2737182, at *4.  Moreover, consolidation of this matter with the bankruptcy case would avoid piecemeal litigation and ensure the centralization of all bankruptcy related matters in one venue, assuring the most efficient and economic administration of the debtor's estate. This factor, therefore, weighs in favor of Defendant.

After weighing the above factors, the Court concludes that equitable remand is inappropriate.  The Court, therefore, will deny Plaintiff's Motion to Remand.

**C.  Motion to Transfer**

Defendant requests the Court transfer venue of this matter to the Central District of California for automatic referral to the bankruptcy court.  In response, Plaintiff argues that the Agreement's forum selection clause dictates that the Court of Chancery adjudicate the matter, and, therefore, transfer should be denied.

Defendant contends transfer is warranted under 28 U.S.C. § 1404[7] and 28 U.S.C. § 1412.[8]  Section 1404 is the general

---

[7]  This section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

transfer statute applicable to all civil cases, and section 1412
governs the transfer of a proceeding under title 11. In re NWL
Holdings, Inc., No. 10-52768, 2011 WL 767777, at * 4 (Bankr. D.
Del. Feb. 24, 2011).  The analysis under either section is
essentially identical, and requires that "the interest of
justice" and "the convenience of the parties" favor transfer. Id.
Although there is no definitive formula or list of factors that
courts should consider when determining whether to transfer a
matter, the Third Circuit has identified twelve relevant
interests, including:

> 1) plaintiff's choice of forum; 2) defendant's forum
> preference; 3) whether the claim arose elsewhere; 4)
> the location of books and records and/or the
> possibility of viewing premises if applicable; 5) the
> convenience of the parties as indicated by their
> relative physical and financial condition; 6) the
> convenience of the witnesses, but only to the extent
> that the witnesses may actually be unavailable for
> trial in one of the fora; 7) the enforceability of the
> judgment; 8) practical considerations that would make
> the trial easy, expeditious, or inexpensive; 9) the
> relative administrative difficulty in the two fora
> resulting from congestion of the courts' dockets; 10)
> the public policies of the fora; 11) the familiarity of
> the judge with applicable state law; and 12) the local
> interest in deciding local controversies at home.

Id. at *5 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873,
879-80 (3d Cir. 1995)).  These factors should be analyzed "on an
individualized, case-by-case basis" to determine "whether
convenience and fairness considerations weigh in favor of
transfer." Jumara, 55 F.3d at 883.  The party seeking transfer

---

[8]  This section provides: "A district court may transfer a case
or proceeding under title 11 to a district court for another
district, in the interest of justice or for the convenience of
the parties." 28 U.S.C. § 1412.

24

must demonstrate by the preponderance of the evidence that it is appropriate. Id. at 879.

### 1.  Plaintiff's choice of forum

Courts generally defer to a plaintiff's choice of forum as long as its legally proper. In re NWL Holdings, Inc., 2011 WL 767777, at * 5.  This is especially true when the contract between the parties giving rise to the suit contains a forum selection clause. See Jumara, 55 F.3d at 880.  Presently, the Court determined that the Agreement's forum selection clause was unenforceable, and that removal was proper. Consequently, the forum of this matter is now the District of Delaware.  Because Plaintiff's forum is not legally proper, and the District of Delaware is also not his choice of forum, this factor weighs neither for or against transfer. See Freedom Mortg. Corp. v. Irwin Fin. Corp., No. 08-146, 2009 WL 763899, at * 6  (D. Del. Mar. 23, 2009) (finding transfer appropriate because the forum selection clause was unenforceable).

### 2. Defendant's forum preference

The amount of weight given to a defendant's choice of forum waxes and wanes according to whether the remaining Jumara factors favor transfer. In re Buffets Holdings, Inc., 397 B.R. 725, 728 (Bankr. D. Del. 2008).  Presently, the majority of the Jumara factors favor Defendant, therefore, the Court finds that this factor weighs in favor of transfer.

### 3. Whether the claim arose elsewhere

The primary dispute between the parties regarding the

25

Advancement Action is whether Plaintiff is entitled to attorneys'
fees with respect to the California Action.  Because the issue
that gave rise to the Advancement Action occurred in California,
the Court finds that this factor weighs in favor of transfer.

### 4. The location of books and records and/or the possibility of viewing premises if applicable

The location of the books and records is not a significant
factor because of the ease of transporting documents. In re DHP
Holdings II Corp., 435 B.R. at 273-74.  Therefore, this factor is
neutral.

### 5. The convenience of the parties as indicated by their relative physical and financial condition

All parties with an interest in the outcome of the
Advancement Action are in California.  Plaintiff resides in
Beverly Hills, and Defendant is headquartered in Santa Monica.
Moreover, the added expense of litigating the dispute in Delaware
might increase the expenses of the estate and lower the amount
available for distribution. See In re Onco Invt. Co., 320 B.R.
577, 580 (Bankr. D.Del. 2005).  The Court, therefore, concludes
that this factor weighs in favor of transfer.

### 6. The convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora

The convenience of the witnesses' factor pertains "only to
the extent that the witnesses may actually be unavailable for
trial in one of the fora." Jumara, 55 F.3d at 879.  Neither party
has shown that potential witnesses will be unavailable in
Delaware or California.  Therefore, the Court finds that this

26

factor does not weigh in favor or against transfer. *See* <u>In re NWL Holdings, Inc.,</u> 2011 WL 767777, at * 6; *see also* <u>In re DHP Holdings II Corp.,</u> 435 B.R. at 274.

### 7. The enforceability of the judgment

There is no reason to believe that the bankruptcy court would not give full faith and credit to a judgment by this Court. This factor, therefore, is neutral. *See* <u>In re NWL Holdings, Inc.,</u> 2011 WL 767777, at * 6.

### 8. Practical considerations that would make the trial easy, expeditious, or inexpensive

This factor gauges "whether it is actually easier, faster or less expensive to litigate this [proceeding] in another forum." <u>In re Onco Inv. Co.,</u> 320 B.R. at 581. Plaintiff argues that because the Chancery Court is more familiar with the Advancement Action and its underlying facts, it would provide a more efficient resolution of the matter. This argument, however, is inaccurate. The Court already concluded that remand is inappropriate. Therefore, the proper question is: whether there is a forum better than the District of Delaware. Transferring this proceeding to the same venue as the bankruptcy case would provide the most effective and economical use of judicial resources because that court is familiar with both the details of the bankruptcy case and the Advancement Action. <u>In re NWL Holdings, Inc.,</u> 2011 WL 767777, at * 6. Thus, this factor weighs in favor of transfer.

### 9. The relative administrative difficulty in the two fora resulting from congestion of the courts' dockets

Although the removal of a single proceeding "will not alleviate this Court's heavy caseload," In re Onco Inv. Co., 320 B.R. at 581, courts in this district have taken "judicial notice of the fact that the District Court of Delaware currently does not have all of its allowed judgeships filled and is itself extremely overburdened." In re DHP Holdings II Corp., 435 B.R. at 275. This factor, therefore, favors transfer.

### 10. The public policies of the fora

Defendant contends transfer is appropriate because of the strong public policy favoring centralization of bankruptcy matters. Although Plaintiff acknowledges this policy, it argues that a contract dispute is at the core of the pending matter. The Court disagrees. As stated above, this claim is a core proceeding. Thus, its "transfer would promote the economic and efficient administration of the estate," id. at 275 (quoting In re Commonwealth Oil Refining Co., Inc., 596 F.2d 1239, 1247 (5th Cir. 1979)), not only because it would permit the simultaneous resolution of the Advancement Action and bankruptcy claim, but also the Advancement Action's resolution could impact the distribution of the estate. The Court, therefore, concludes that this factor weighs in favor of transfer.

### 11. The familiarity of the judge with applicable state law

Plaintiff asserts that the resolution of the Advancement Action turns squarely on the interpretation of the Agreement

28

under Delaware law.  Accordingly, this Court would be more familiar with substantive Delaware law than the bankruptcy court in California.  In response, Defendant states that the contract interpretation issues raised by the Advancement Action are neither novel nor complex.  Therefore, the bankruptcy court is entirely capable of adjudicating the dispute.  The Court disagrees.  Although there is no reason to conclude that the bankruptcy court in California cannot apply Delaware law, a judge sitting in Delaware is more familiar with Delaware state law. In re Buffets Holdings, Inc., 397 B.R. at 730 (finding this factor in favor of transfer because a federal judge in Michigan is more familiar with Michigan state law than a bankruptcy judge in Delaware); *see* In re Centennial Coal, Inc., 282 B.R. 140, 148 (Bankr. D.Del. 2002) ("[A]lthough Plaintiff claims that none of the issues involved are novel or complex, I think it would be more appropriate for a local judge to decide the matter").  This factor, therefore, slightly weighs in favor of maintaining the Advancement Action in Delaware.

### 12. The local interest in deciding local controversies at home

Defendant does not dispute Plaintiff's contentions that the Advancement Action is purely a Delaware controversy governed by Delaware law.  Because "it is preferable for a court of the state whose substantive law controls the action to hear the case," Sports Eye, Inc. v. Daily Racing Form, Inc., 565 F.Supp. 634, 639 (D. Del. 1983), the Court finds that this factor favors

29

maintaining this action in Delaware. *See* <u>In re Buffets Holdings, Inc.</u>, 397 B.R. at 730.

After weighing the above factors, the Court concludes Defendant has met its burden of establishing that transfer of the Advancement Action to the United States District Court for the Central District of California is warranted for the convenience of the parties and in the interest of justice.

## III. Conclusion

For the reasons set forth above, the Court will deny Plaintiff's Motion to Remand [Doc. 3], and will grant Defendant's Motion to Transfer [Doc. 6].  An appropriate Order will be entered.


Date: September 9, 2011                      /s/ NOEL L. HILLMAN
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.